## Case No. 11,239.

### POAG v. The McDONALD.

[17 Leg. Int. 318.]

Circuit Court, S. D. New York. Aug. 29, 1860.

JURISDICTION OF FEDERAL COURTS — ADMIRALTY CASES—STATE WATERS.

[The federal courts have no jurisdiction of a suit in admiralty to recover damages resulting from negligent towage upon the Hudson river in the course of a voyage from Albany to New York; and it is immaterial whether the libel be founded upon contract or in tort, for the state governments have exclusive jurisdiction of their purely internal trade and commerce.]

[Cited in The Brooklyn, Case No. 1,938.]

[Appeal from the district court of the United States for the Southern district of New York.]

[This was a libel by John Poag and others against the General McDonald for negligence in towing. From a decree of the district court dismissing the libel (Case No. 11,238), libelants appeal.]

Platt, Gerard & Buckley, for appellant.

Benedict, Burr & Benedict, for appellees.

NELSON, Circuit Justice. This is a libel filed in the court below to recover damages to a canal boat while in tow of the McDonald, on the North river, from Albany to the city of New York. The steamboat was engaged in the business of towing between these two places. The canal boat was wrecked at Vanwie's Point, some six miles below Albany, through an alleged fault of the tug. The court dismissed the libel for want of jurisdiction. [Case No. 11,238.]

It is conceded that if the libel is to be regarded as founded in contract, it must fall within the case of Allen v. Newbury, 21 How. [62 U. S.] 244, and Maguire v. Card, Id. 248. But it is insisted that the suits are founded in tort for the wrongful injury to the canal boat, she having been forced upon the rocks

by the negligence and carelessness of the McDonald. In our view of the question, it is quite immaterial whether we assume the libel to be in contract or tort. In either aspect, the court below has no jurisdiction. The foundation principle is that the state governments have exclusive cognizance of their purely internal trade and commerce, and hence that the federal government is excluded therefrom. The grant of power on this subject to the latter is, "to regulate commerce with foreign nations, and among the several states." This clause has been expounded by the highest authority under the constitution as not embracing the exclusively internal trade of the states. The regulation of the trade must then depend upon state legislation, and upon state legislation alone. And if the district court, upon which exclusive admiralty power has been conferred in the federal government, should assume jurisdiction, it would be a jurisdiction to administer the local and municipal laws of the state, which is inconsistent with and repugnant to the principles of admiralty proceedings as they exist under the constitution and laws of congress. For the jurisdiction thus assumed would necessarily be governed and regulated, contracted or enlarged, according to the existing local and municipal laws of the state. We confess we have never seen any answer to this view of the objection to admiralty cognizance of the purely internal trade and commerce of the states. And the objection is just as applicable to the cases of tort as of contract; each is under the local legislation of the state. And the converse of the proposition is equally true, namely, that all cases growing out of foreign commerce, or commerce among the several states, and which are in their nature and character of admiralty cognizance, whether the cases relate to persons or property, or whether the tort or contract are within the jurisdiction of the federal government, which has been conferred on the district court. The determination of this class of cases depends, not upon the local and municipal laws of the states, but upon the more comprehensive principles of maritime and international law, modified and controlled by the constitution, laws of congress, and treaties.

So far as respects the regulation of foreign commerce, and commerce among the states, there can be no conflict between federal and state tribunals as to jurisdiction. For it is quite clear that, inasmuch as congress possesses the paramount power of legislation over the subject, it may not only pass laws regulating it, but may constitute tribunals to administer these laws. "The judicial power shall extend to all cases in law and equity, arising under the constitution, the laws of the United States and treaties." Const. art. 3, § 2.

The contested question of admiralty jurisdiction, except as it respects the internal trade of the states, does not concern the jurisdiction of state tribunals; as, independently of this internal commerce, the whole subject (foreign commerce, and commerce among the states) belongs to the federal government, and is subject to its regulation; and, consequently, within the above clause of the constitution, the federal court, upon which the power to administer the laws has been conferred, possesses the appropriate jurisdiction. Any dispute that may arise under the existing arrangement of the judicial power, involves simply the question whether the district court of the United States shall administer the law, or some other federal court on the common law side, instead of in admiralty. In some of the earlier cases in which the admiralty jurisdiction has been zealously and elaborately contested, the encroachment upon state jurisdiction and state laws constituted one of the prominent objections. Another was the substitution of civil law and its form of proceedings for the common law and the statutes of the states. [Waring v. Clarke] 5 How. [46 U. S.] 470, 490, 496, 500, Woodbury, J.; [New Jersey Steam Nav. Co. v. Merchants' Bank] 6 How. [47 U. S.] 397, 414, Daniel, J.

These objections, so far as the states are concerned, are certainly without any foundation. For the tribunals, modes of proceeding, and rules of decision depend upon the authority and direction of the federal government; and any questions that may arise in respect to them must be settled by that authority. Congress shall have power "to regulate commerce with foreign nations, and among the several states," and "the judicial power shall extend to all cases, in law and equity, arising under this constitution, the laws of the United States, and treaties," "to all cases of admiralty, and maritime jurisdiction," &c. This question of sovereignty, which has been drawn into the controversy concerning the admiralty jurisdiction, as between the states and federal government, of course did not enter into that carried on in England. Both the common law and admiralty powers of the respective tribunals depended there upon the same authority, the parliament of England. The struggle was between contesting tribunals for power under the same government; and with few exceptions, whichever tribunal in the end should take cognizance of the case, it was but to administer the same system of law; for in England, even when cognizance was taken by the common law courts of cases maritime in their nature, they applied the law of the seas as the rule of decision. So, in this country, under the constitution of the United States, whatever federal tribunal should take cognizance of maritime cases, or cases maritime in their nature, whether of common law or admiralty, it would be obliged to administer, generally speaking, the same system of jurisprudence.

We have said, and we think we have shown, that the tribunals of the states, under our system of government, have no interest in this controversy concerning the admiralty jurisdiction, nor can it be affected by the

laws of the states. We agree that, under the constitution and laws of congress, the question may be appropriately agitated in the judicial tribunals of the federal government, the same as it was in England; and the line of jurisdiction, whatever it may be, whether of admiralty or of common law cognizance, in the federal government, under the clause in the constitution conferring upon it the power over foreign commerce, and commerce between the states, must depend ultimately upon the legislation of congress; and the same clause, by necessary implication, fixes the line of jurisdiction in the states, as all power over the subject, outside of this grant, is left to the states,—in other words, remains where it existed before the adoption of the constitution,—and comprehends jurisdiction over all their exclusively internal trade and commerce. By adhering to this line, there need be no conflict between the two systems of government. The purely domestic concerns of the states are left to their own regulation: those foreign, or which concern sister states, are subject to the regulation of the federal government. In the working of our complex system there may be, at times, apparent difficulties; but when brought to the test of the constitution, the paramount law, they disappear. As an instance, a foreign ship, or one trading between different states, may be found in the internal waters of a state, and meet there a vessel engaged in its purely internal trade, each under the regulation of a different and conflicting system of law, proceeding from different sovereignties; and where a collision is imminent, or may have occurred, and the question arises which system is to govern, the constitution settles it. "This constitution, and all laws of the United States which shall be made in pursuance thereof, and all treaties, &c., shall be the supreme law of the land; and the judges, in every state, shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding." We are satisfied the decree of the court below in denying jurisdiction in the case was right, and should be affirmed.

[For opinion of circuit court as to costs, see Case No. 8,756.]